**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Murad Ferguson, individually and on behalf of all others similarly situated, | 1:21-cv-03775 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Tropicale Foods, LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Tropicale Foods, LLC ("defendant") manufactures, labels, markets and sells paletas made from coconuts and other tropical fruits, under its Helados Mexico brand ("Product").



## I.    HISTORY OF PALETAS

2.      The 1940s was a time of economic prosperity in Mexico and because of this, ice cream bars made with fresh milk and fresh fruit found their way into the Mexico City market. The ice pops eventually migrated to the United States.

3.      Following World War Two, Mexico experienced economic prosperity in the 1940s.

1

4.      During this decade, Ignacio Alcázar, of Tocumbo, Michoacán (see red area on map), México, returned from a journey to the United States.



5.      Alcázar noted the popularity of frozen desserts on sticks – "popsicles" – but lamented they were full of artificial ingredients like sugar syrups and food dyes.

6.      Alcázar wanted to rely on what his home state had in abundance – "whole ingredients like fresh pureed fruits, nuts, and spices," and fresh dairy, according to Fany Gerson, of New York City-based paleta shop, La Newyorkina.

7.      Called "paletas" or "little sticks," these treats were based on fresh milk (Paletas de leche) and fresh fruits.

8.      Paletas de leche flavors usually complement the milk base, such as strawberry, cajeta (caramelized milk) and arroz con leche (rice pudding).

9.      Paletas de agua (fruit-based) are variable, based on whatever fruits were plentiful in the most recent harvest.

10.     Mango, lime and coconut are mainstays, but paletas "adapt their flavors to the tastes of the community and local availability of ingredients," which is why chili pepper varieties are

sometimes available.

11.    By the end of the 1940s, Alcázar expanded to Mexico City, where this refreshing snack was a perfect fit for the year-round heat.

12.    As immigration from Mexico to the United States increased, so did the cultural exchanges.

13.    Paletas quickly caught on in areas where there was a large Mexican population but were always "second fiddle" to the sugary popsicle.

## II.    CONSUMER DEMAND FOR AUTHENTICITY

14.    Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – whisky from Scotland, sake from Japan, and Italian tomatoes from Italy.

15.    For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

16.    Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place, such as Mexico for Defendant's paletas.

17.    The reasons include (1) an expectation that a product made in the location where it was first developed will be higher quality than elsewhere and (2) a desire to support and maintain local traditions and cultures at the expense of large-scale production by international conglomerates.

18.    In the present instance, consumers expect Defendant's paletas to be made in Mexico and contain the unique characteristics of paletas made there.

19.    In many areas with thriving Mexican-American populations, the "paletero" is a

common feature of warmer weather.

20.     The paletero is a cultural icon "that has made its way into the mainstream American way of life."

21.     Though many paleteros sell the "big brands," they also sell paletas made in the traditional methods, with traditional ingredients, like fresh fruit and milk.

22.     Paleteros rely on their brightly colored pushcarts, bearing the name of their company, and announce their presence with the ringing of bells, instead of Madison Avenue-inspired jingles.[1]



23.     In fact, many Mexican immigrants who lack capital to purchase the minimum quantities of the branded frozen desserts rely on the traditional methods and fresh fruit ingredients to make and sell the paletas of their homeland.

24.     Since many paleteros offer paletas made in a small-batch, traditional way, there has been little in the way of consolidation or economies of scale.

---

[1] Alpha, The Paletero is a Latino Cultural Phenomenon that is Becoming an American Icon, Ortiz Ice Cream, May 18, 2018.

25.     Consumers seeking wholesome, refreshing treats benefit from this, because the typical paletero lacks access to sophisticated commercial ingredients like high fructose corn syrup and fruit purees.

26.     Instead, they will rely on cane sugar and fresh fruit.

## III.   REPRESENTATIONS PRODUCT IS MADE IN MEXICO

27.     Defendant's marketing and advertising of the Product gives consumers the impression it is made in Mexico.

28.     This includes the iconic blue pushcart, with the bells at the handle, "HELADOS MEXICO," "PREMIUM ICE CREAM," "PALETA DE CREMA," "CON CREMA," "COCONUT," "COCO," "ALL NATURAL INGREDIENTS," pictures of coconut chunks, the products, and "Bars/Paletas."



29.    The back label contains the same images and statements, but goes further by promising, "THE DELICIOUS TASTE OF MEXICO – NATURALLY."



30.    Reasonable consumers are aware that frozen desserts can be transported across vast distances, due to modern technology and insulation.

31.    However, contrary to the Product's representations and omissions, it is not made in Mexico, lacks the type and quality of ingredients historically associated with this food and is not made in the traditional methods.

32.    That the Product is not made in Mexico, but in Ontario, California, is indicated in the fine print on the side of the Product.

MANUFACTURED BY: TROPICALE FOODS, LLC
PLANT# 06-13967 ONTARIO, CA 91762

6

## IV.   CONCLUSION

33.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

34.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

35.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

36.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

37.    The Product is sold for a price premium compared to other similar products, no less than $4.99 for six three-ounce bars (528 mL), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

38.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

39.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

40.    Plaintiff Murad Ferguson is a citizen of New York.

41.    Defendant Tropicale Foods, LLC is an California limited liability company with a principal place of business in Ontario, Los Angeles County, California and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

42.    The parties are citizens of different states.

43.    Venue is in this district because plaintiff resides in this district and a substantial part

of the events or omissions giving rise to the claims occurred here.

<u>Parties</u>

44.    Plaintiff Murad Ferguson is a citizen of Staten Island, Richmond County, New York.

45.    Defendant Tropicale Foods, LLC, is a California limited liability company with a principal place of business in Ontario, California, Los Angeles County.

46.    Defendant is owned and/or controlled not by humble Paleteros, but by a Chicago-based, multinational private equity outfit, identified only as "Wind Point Partners."

47.    Though the founders of Defendant are believed to have once operated the iconic blue pushcarts, this was decades ago.

48.    Today, through Wind Point Partners, Defendant has acquired other producers of traditional paletas.

49.    Plaintiff bought the coconut Product on one or more occasions within the statute of limitations for each cause of action alleged, from stores including Dollar Tree, 2040 Forest Ave, Staten Island, NY 10303, in or around June 2021, among other times.

50.    Plaintiff saw the front label that said, "Helados Mexico," the Spanish-language descriptions and the blue pushcart with the bells.

51.    Plaintiff saw the back label which said, "THE DELICIOUS TASTE OF MEXICO – NATURALLY."

52.    Plaintiff was aware of brightly colored pushcarts, which make small-batch frozen treats, with fresh ingredients, and sell them to customers.

53.    Plaintiff understood the Product was obviously not sold in a blue pushcart, but that it was made in Mexico, with traditional ingredients grown in Mexico and made in traditional methods.

54.   Plaintiff wanted more than a "Mexican-style" paleta, but a product that was made in Mexico, with ingredients from Mexico, and through traditional methods.

55.   Plaintiff bought the Product at or exceeding the above-referenced price.

56.   Plaintiff relied on the representations identified here.

57.   Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

58.   Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

59.   The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

60.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

61.   The class will consist of New York residents who purchased the Product during the statutes of limitations for each cause of action alleged.

62.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

63.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

64.   Plaintiff is an adequate representative because his interests do not conflict with other members.

65.   No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

66.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

67.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

68.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

69.   Plaintiff incorporates by reference all preceding paragraphs.

70.   Plaintiff and class members desired to purchase a product which was made in Mexico, with traditional Mexican ingredients and through the traditional methods.

71.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

72.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

73.   Plaintiff relied on the representations.

74.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

75.   The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was made in Mexico, with traditional Mexican ingredients and through the traditional methods.

76. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

77. This duty is based on Defendant's outsized role in the market for this type of Product.

78. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

79. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

80. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

81. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

82. Defendant had a duty to truthfully represent the Product, which it breached.

83. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians of the Helados Mexico brand.

84. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known brand.

85. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

87.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made in Mexico, with traditional Mexican ingredients and through the traditional methods

88.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

89.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:    July 6, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com